1 | EILEEN B. GOLDSMITH (SBN 218029)
ZOE PALITZ (SBN 275752)
2 | SAMUEL HULL (SBN 345265)
ALTSHULER BERZON LLP
3 | 177 Post Street, Suite 300
San Francisco, CA 94108
4 | Telephone: (415) 421-7151
Facsimile: (415) 362-8064
5 | E-mail: egoldsmith@altber.com
        zpalitz@altber.com
6 |     shull@altber.com

7 | *Attorneys for Plaintiff International Union*
*of Operating Engineers Local 3*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 3,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON PETROLEUM COMPANY, LP and TESORO REFINING AND MARKETING LLC,<br><br>Defendants. | CASE NO. 3:22-cv-09057-AGT<br><br>**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 3'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT IN SUPPORT OF COMPLAINT TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  April 14, 2023<br>Time:  10:00 a.m.<br>Courtroom:  A, 15th Floor<br>Judge:  Hon. Alex G. Tse<br><br>Complaint Filed:  December 19, 2022<br>Trial Date:  Not Yet Set |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Please take notice that at 10:00 a.m. on April 14, 2023, in Courtroom A, 450 Golden Gate Avenue, San Francisco, CA, before the Honorable Judge Alex G. Tse, Plaintiff International Union of Operating Engineers, Local 3 ("Local 3") will and hereby does move the Court for summary judgment on its Complaint to Compel Arbitration (Dkt. 1).

This motion is made pursuant to Federal Rule of Civil Procedure 56(a) on the grounds that there is no triable issue as to any material fact and Plaintiff is entitled to judgment as a matter of law. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and evidence in support thereof, the Declarations of Brooke Bond and Gening Liao and exhibits thereto, the complete files and records of this action, and such other and further matters as the Court may properly consider.

Dated: March 9, 2023            Altshuler Berzon LLP

By: */s/ Eileen B. Goldsmith*
      Eileen B. Goldsmith

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................iv

INTRODUCTION ............................................................................................................................1

FACTS ..............................................................................................................................................1

    I. Development of the PLA ........................................................................................................1

    II. The PLA Requires Grievance and Arbitration of Disputes ..................................................2

    III. Local 3's Grievance Against Defendants ............................................................................2

        A. Relevant Provisions of the PLA .....................................................................................2

        B. Processing of Local 3's Grievance .................................................................................3

ARGUMENT ....................................................................................................................................4

    I. When Assessing Arbitrability, Courts Apply a Strong Presumption in Favor of Arbitration .....5

    II. The PLA's Arbitration Clause Covers Local 3's Subcontracting Grievance ............................6

CONCLUSION .................................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AT&T Techs., Inc. v. Communications Workers*,
    475 U.S. 643 (1986) ..................................................................................................... 5, 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................... 4, 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................................................... 6

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) ........................................................................................... 5

*Int'l Bhd. of Elec. Workers Local 1245 v. Citizens Telecommc'ns Co. of Cal.*,
    549 F.3d 781 (9th Cir. 2008) .......................................................................................... 5, 6

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*,
    989 F.2d 1077 (9th Cir. 1993) ........................................................................................... 6

*Retail Clerks Int'l Ass'n, Loc. Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*,
    369 U.S. 17 (1962) ............................................................................................................ 5

*Sheetmetal Workers Union Loc. No. 110 v. Pub. Serv. Co. of Indiana, Inc.*,
    771 F.2d 1071 (7th Cir. 1985) ........................................................................................... 5

*United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*,
    13 F.3d 1365 (9th Cir. 1994) ................................................................................. 5, 6, 7, 9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) .................................................................................................*passim*

*Univ. Hosp. Health System, Inc. v. Bldg. Constr. Laborers Local Union No. 310*,
    2009 WL 4756353 (N.D. Ohio Aug. 17, 2009) ................................................................. 5

*Zoom Elec., Inc. v. Int'l Bhd. of Electrical Workers, Local 595*,
    989 F. Supp. 2d 912 (N.D. Cal. 2013) ............................................................................... 5

**Federal Statutes**

Labor-Management Relations Act §301, 29 U.S.C. §185 ................................................... 5, 6

**INTRODUCTION**

Plaintiff International Union of Operating Engineers, Local 3 ("Local 3") and Defendants Marathon Petroleum Company, LP ("Marathon") and Tesoro Refining & Marketing Co., LLC ("Tesoro") (collectively "Defendants") are parties to the "Tesoro California Refineries Construction & Maintenance Labor Agreement," which is a project labor agreement ("PLA") that applies to the Marathon refinery facility in Martinez, California.

The PLA requires Defendants to subcontract work covered by the PLA only to contractors that become parties to the PLA. In violation of that promise, Defendants subcontracted work for the refinery project that falls within Local 3's craft jurisdiction, including soils and materials inspection and testing and building/construction inspection, to subcontractors that did not become parties to the PLA. Accordingly, Local 3 filed a grievance for Defendants' violations of the PLA, pursuant to the PLA's dispute resolution mechanism. However, Defendants refuse to arbitrate that grievance.

This action seeks to compel Defendants to arbitrate Local 3's grievance. Because the PLA, to which both Defendants are subject, contains a broad arbitration clause that covers Local 3's grievance, Defendants are required to arbitrate that grievance. The Court should enforce the parties' agreement to arbitrate in accordance with the PLA's arbitration clause and federal policies strongly favoring arbitration of labor-management disputes. *See*, *e.g.*, *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).

**FACTS**

**I.      Development of the PLA**

Plaintiff Local 3 is a labor organization that represents construction workers throughout California, Nevada, Utah, and Hawaii. Declaration of Gening Liao ("Liao Decl."), ¶1.

In 2017, Defendant Tesoro entered into the PLA with the State Building and Construction Trades Council of California ("State Council"), the Los Angeles/Orange Counties Building and Construction Trades Council, and the Contra Costa Building and Construction Trades Council ("Local Councils"). Liao Decl., ¶3. The local unions affiliated with the Local Councils, including Local 3, also signed the PLA. *Id.* The PLA is a pre-hire collective bargaining agreement that

governs the terms and conditions of work for employees of contractors working on the Martinez refinery facilities and sets forth the scope of work to which those terms and conditions apply. *Id.*

After Defendant Marathon acquired Defendant Tesoro, Marathon confirmed by a June 2021 letter to the State Council that covered work performed on the Martinez Renewable Fuels Project ("Project") at the Martinez refinery would continue to be performed subject to the terms of the PLA. Declaration of Brooke Bond ("Bond Decl."), ¶4, Exh. A. Defendants admit they are parties to the PLA. Defendants' Answer to Plaintiff's Complaint ("Answer") (Dkt. 17), ¶1.

## II. The PLA Requires Grievance and Arbitration of Disputes

Article 8 of the PLA sets forth a multi-step grievance and arbitration procedure culminating in final and binding arbitration. The grievance and arbitration clause applies to "any question arising out of and during the term of [the PLA] involving its interpretation and application (other than jurisdictional disputes)." Liao Decl., Exh. A ("PLA"), §8.1. The PLA's dispute resolution mechanism culminates in an arbitration before one of a list of seven arbitrators. PLA §8.4, Step 4. The arbitrator's award "shall be final and binding as to all parties signatory to" the PLA. PLA §8.6.

## III. Local 3's Grievance Against Defendants

In summer 2022, a dispute arose between Local 3 and Defendants regarding the Defendants' subcontracting of soils and materials inspection and testing and building/construction inspection at the Martinez refinery to a company that did not become signatory to the PLA. Local 3 asserted that the work was covered work under the PLA and, therefore, should have been performed by a subcontractor that became a party to the PLA. Defendants contended that the work was not covered work.

### A. Relevant Provisions of the PLA

Several provisions of the PLA are relevant to this dispute. First, the PLA provides that the owner (which is Defendants, here) "agree[s] that [it] will contract for the assignment, awarding or subcontracting of Covered Work, or authorize another party to assign, award or subcontract Covered Work, only to a person, firm, corporation or other entity that, at the time the contract is executed, has become a party to this Agreement by executing Attachment A, the Agreement to be

Bound." PLA §3.1; *see also* PLA Attachment A, Agreement to be Bound. The PLA further provides that the owner "agree[s] that [it] will subcontract for the performance of Covered Work only to a person, firm, corporation or other entity who is or becomes party to this Agreement and who is or becomes signatory to the Master Agreement with the craft Union having traditional and customary building trades craft jurisdiction over the work." PLA §3.2.

The PLA also provides that "[a]ny Employer that fails to provide the Local Council and State Council with the Employer Agreement to be Bound executed by its contractor or subcontractor shall be liable for any failure of that contractor or subcontractor, or any contractor or subcontractor at a lower tier, to comply with the provisions of this Agreement, including any contributions to any trust funds that the contractor or subcontractor, or any subcontractor to that subcontractor, fails to make." PLA §3.3. The definition of "Employer" expressly includes the refinery operator—namely, the Defendants Marathon and Tesoro. *See* PLA §1.4 ("all project managers, construction managers, contractors, subcontractors or other persons or entities assigning, awarding or subcontracting Covered Work … will be subject to this Agreement by executing Attachment A, the Employer Agreement to be Bound (all of whom, including the Owner, are individually and collectively referred to as 'Employer,' 'Employers,' 'Contractor' or 'Contractors').").

The PLA defines "Covered Work" to include, among other things, "all on-site construction, alteration, painting, or repair of buildings, structures, *and other works and related activities for the Project that is within the craft jurisdiction of one of the Unions, including, without limitation* pipelines, pumps and pump stations, start-up and commissioning, construction abatement, site preparation, survey work and *soils and materials inspection and testing*." PLA §2.1 (emphasis added).

**B. Processing of Local 3's Grievance**

In the summer of 2022, Local 3 became aware that Defendants had subcontracted soils and materials inspection and testing work at the Martinez refinery, including building and construction inspection, to several subcontractors that did not have collective bargaining relationships with Local 3. Liao Decl., ¶¶5-6. Defendants had not notified Local 3 that they would be using these

3

subcontractors to perform this work, and, to the Union's knowledge, Defendants did not require these subcontractors to sign an Agreement to be Bound by the PLA. Liao Decl., ¶6. The work these subcontractors were performing on the Project was the same kind of work that, on other similar projects, is routinely subcontracted to subcontractors that are signatory to collective bargaining agreements with Local 3 and is performed by workers who are represented by Local 3. Liao Decl., ¶7.

On August 4, 2022, Local 3 House Counsel Gening Liao emailed Defendants to inform them that Local 3 believed that Marathon was in violation of the PLA by subcontracting the soils and materials inspection and testing work to subcontractors who were not signatory to collective bargaining agreements with Local 3 and who had not signed Agreements to be Bound by the PLA. Liao Decl. ¶8, Exh. B. On August 12, 2022, Local 3 filed a grievance alleging that Defendants were in violation of the PLA. Liao Decl. ¶9, Exh. C. Representatives of the parties met several times between August and November 2022 in an unsuccessful attempt to resolve Local 3's grievance. Liao Decl. ¶10.

On November 10, 2022, after the parties had failed to resolve the dispute, Local 3 requested that the parties proceed to arbitration pursuant to the dispute resolution mechanism in Article 8 of the PLA. Defendants for the first time communicated their position to Local 3 that there was no binding agreement to arbitrate Local 3's grievance. Liao Decl. ¶11, Exh. D. Defendants continue to refuse to select arbitrators or proceed any further toward arbitration of this grievance. Liao Decl. ¶12. On December 19, 2022, Local 3 filed this petition to compel arbitration.

**ARGUMENT**

Federal Rule of Civil Procedure 56 provides that the court shall grant summary judgment where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Where the non-moving party bears the burden of proof on a claim, as Defendants do here as the parties contesting arbitrability, the Union as the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the Union has met this burden, the Defendants "may not rest upon the mere allegations or denials of the adverse party's pleading,"

but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citations omitted). If the Defendants fail to demonstrate a triable issue "on an essential element of [their] case with respect to which [they] ha[ve] the burden of proof," the Union is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 323.

As demonstrated below, Defendants cannot demonstrate a triable issue of fact and Local 3 is entitled to judgment as a matter of law.

## I. When Assessing Arbitrability, Courts Apply a Strong Presumption in Favor of Arbitration

Section 301 of the Labor-Management Relations Act ("Section 301"), 29 U.S.C. §185, provides a cause of action to enforce an arbitration clause governing disputes arising under a collective bargaining agreement. *See, e.g.*, *Warrior & Gulf*, 363 U.S. at 582; *Int'l Bhd. of Elec. Workers Local 1245 v. Citizens Telecommc'ns Co. of Cal.*, 549 F.3d 781, 784 (9th Cir. 2008); *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.,* 13 F.3d 1365, 1368 (9th Cir. 1994).

A project labor agreement is a type of collective bargaining agreement that is enforceable in federal court under Section 301. *See, e.g.*, *Zoom Elec., Inc. v. Int'l Bhd. of Electrical Workers, Local 595*, 989 F. Supp. 2d 912, 929 (N.D. Cal. 2013) (rejecting argument that PLA is not a collective bargaining agreement enforceable under Section 301); *Univ. Hosp. Health System, Inc. v. Bldg. Constr. Laborers Local Union No. 310*, 2009 WL 4756353, *2 (N.D. Ohio Aug. 17, 2009) ("PLA[]s are labor contracts for purposes of LMRA jurisdiction"); *Sheetmetal Workers Union Loc. No. 110 v. Pub. Serv. Co. of Indiana, Inc.*, 771 F.2d 1071, 1073 n.1 (7th Cir. 1985); *see also Retail Clerks Int'l Ass'n, Loc. Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (holding that Section 301 encompasses any "agreement between employers and labor organizations significant to the maintenance of labor peace between them").

Under Section 301, "the question of arbitrability – whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649

1  (1986) (citing *Warrior & Gulf*, 363 U.S. at 582-83).  To answer that question, the court determines

2  first, whether the labor agreement contains an arbitration provision and second, whether a party has

3  refused to arbitrate a dispute covered by that provision.  *Citizens Telecomm'cs*, 549 F.3d at 784.  If

4  both conditions are met, the court orders the parties to arbitrate.  *Id.* (affirming arbitration order);

5  *see also Geldin Meat*, 13 F.3d at 1369 (reversing order denying arbitration).

In assessing arbitrability under Section 301, federal courts pay heed to the strong federal policy favoring arbitration of labor-management disputes.  *See Warrior & Gulf*, 363 U.S. at 582-83.  Although a party is not required to submit a dispute to arbitration where it has not agreed to arbitrate, there is a presumption in favor of arbitrability.  *Id.*  As the Supreme Court has explained, there is a very low threshold for concluding that a labor dispute is arbitrable:

> [T]he judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate . . . .  An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is *not* susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* (emphasis added); *see also AT & T Techs.*, 475 U.S. at 649-50 (1986) (presumption in favor of arbitration is particularly applicable when the labor agreement features a broad arbitration clause).[1]

In *Warrior & Gulf*, the Supreme Court cautioned courts against delving into the nature of the underlying grievance when that determination would effectively entangle courts in the merits of bargaining parties' contractual disputes.  *See Warrior & Gulf*, 363 U.S. at 583-85 (refusing to decide whether a dispute implicated the exclusive, non-grievable functions of management, because to do so would cause the Court to become "entangled in the construction of the substantive provisions of a labor agreement").

**II.    The PLA's Arbitration Clause Covers Local 3's Subcontracting Grievance**

As the "part[ies] contesting arbitrability," Defendants "bear[] the burden of demonstrating" that the current dispute is not arbitrable.  *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993).  Defendants cannot meet their burden under

---

[1] As parties to a contract featuring an arbitration clause, Defendants are also bound to arbitrate this grievance under the Federal Arbitration Act.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Local 3 and Defendants are parties to a valid agreement, and that agreement encompasses the underlying dispute.  *See id.*

*Warrior & Gulf* "of establishing with 'positive assurance' that" the arbitration provision of the PLA "is not susceptible of an interpretation covering this dispute." *Geldin Meat*, 13 F.3d at 1368.

Local 3 and Defendants are parties to a PLA that provides for the arbitration of any disputes between those parties about the PLA's meaning. Article 8 of the PLA broadly requires signatory parties to arbitrate "any question arising out of and during the term of [the PLA] involving its interpretation and application (other than jurisdictional disputes)." PLA §8.1. There are no additional requirements for compelling arbitration: if a grievance arises concerning the meaning of the PLA, any party to the PLA may be compelled to arbitrate that grievance.[2]

Such a grievance arose when Local 3 asserted that Defendants violated the PLA's subcontracting provisions. Liao Decl. ¶9 & Exh. A. Whether Defendants violated those provisions is plainly a "question arising out of and during the term of [the PLA] involving its interpretation and application," PLA §8.1, because it requires a determination of whether the inspection and testing work in dispute is "Covered Work" within the meaning of the PLA. In their Answer, "Defendants admit that the parties dispute whether Defendants' conduct violates the PLA, including but not limited to whether the work is 'Covered Work' under the PLA section 2.1." Answer ¶19. Defendants further admit that they operate the Martinez refinery and are parties to the PLA. Answer ¶¶1, 7-8.

Because Defendants are parties to a contract with an arbitration provision, and Local 3's grievance falls within the scope of arbitrable disputes under that agreement, the Court must order Defendants to arbitrate. Any further investigation by this Court would require an impermissible

---

[2] Under the PLA, the refinery owner can be compelled to arbitrate like any other signatory party. Article 8 provides that "[t]he Owner and other Employers, as well as the Unions, may bring forth grievances under this Article." PLA §8.2. PLA section 8.7 explicitly contemplates arbitration involving grievances brought against the owner and provides specific cost-bearing terms for such arbitrations. PLA §8.7 ("Regardless of whether the Owner participates in the resolution of a grievance, the Owner will not be responsible for any costs or expenses *unless the grievance is against the Owner*.") (emphasis added).

The owner is also expressly identified as an "employer" under the PLA, PLA §1.4, and every substantive requirement involving subcontracting applies to the owner, *e.g.*, PLA §§3.1-3.3. Moreover, because the PLA excludes "Work performed by Owner's regular employees" from the definition of "Covered Work," PLA §2.3.7, any interpretation of the PLA as only creating a duty for the owner to bargain only with *its own direct employees* would render meaningless the inclusion of the owner in the provisions regarding subcontracting.

7

1 inquiry into the merits of the underlying grievance.  If the work in dispute *was* Covered Work, then

2 Defendants violated the PLA by subcontracting it to contractors who were not signatory with Local

3 3 and who did not agree to be bound by the PLA.  Conversely, if the work in dispute *was not*

4 Covered Work, then Defendants' actions did not violate the PLA.  To decide that this matter is not

5 arbitrable would require the Court *itself* to interpret the PLA's substantive provisions to ascertain

6 the scope of, and limitations on, the definition of Covered Work, and therefore would undermine

7 the role that the PLA expressly assigns to the arbitrator.

8       This case is indistinguishable from *Warrior & Gulf*, the foundational Supreme Court case in

9 this area.  There, the parties had a similarly broad arbitration clause that covered any "differences

10 aris[ing] between the Company and the Union or its members employed by the Company as to the

11 meaning and application of the provisions of this Agreement," except for "matters which are

12 strictly a function of management."  *Warrior & Gulf*, 363 U.S. at 576.  The employer had

13 subcontracted certain work to a non-union subcontractor, and the plaintiff union's grievance turned

14 on whether the work subcontracted was within the scope of work covered by the collective

15 bargaining agreement.  *Id.* at 575.  The Supreme Court held that the union's grievance was

16 arbitrable, noting that "only the most forceful evidence of a purpose to exclude the claim from

17 arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration

18 clause quite broad."  *Id*. at 585.  And because "any attempt by a court to infer such a purpose" to

19 exclude a dispute from arbitration "necessarily comprehends the merits," the Supreme Court

20 directed the federal courts to "view with suspicion an attempt to persuade it to become entangled in

21 the construction of the substantive provisions of a labor agreement, even through the back door of

22 interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

23 *Id*.  "[I]f courts, in order to determine arbitrability, were allowed to determine what is permitted

24 and what is not, the arbitration clause would be swallowed up by the exception."  *Id.* at 584.

25       The same holds true in this case.[3]  The question whether the disputed soils and materials

26 inspection and testing and building/construction inspection work is covered under the PLA is

---

[3] Defendants' invocation of "managerial privilege" as an affirmative defense to Local 3's complaint to compel arbitration, Answer at 8, is indistinguishable from the defense to arbitrability that the Supreme Court rejected in *Warrior & Gulf*.  As the Court put it, any such privilege "must

deeply intertwined with the merits of that underlying dispute. It would require the Court, for example, to interpret the language of the PLA, to examine the bargaining history to understand the parties' intent in agreeing that soils and materials inspection and testing was "Covered Work," PLA §2.1, and to investigate the industry practice for the performance of soils and materials inspection and testing and building/construction inspection work. *See, e.g.*, *Geldin Meat*, 13 F.3d at 1369 & n.5 (discussing principles of arbitral interpretation that apply to labor contracts and holding that "it is up to the arbitrator, not the District Court, to apply principles of contract law in interpreting the CBA"). As the Supreme Court and Ninth Circuits have repeatedly held, such investigations must be reserved for the arbitrator. *See Warrior & Gulf*, 363 U.S. at 585 ("Whether contracting out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts.").

## CONCLUSION

For the foregoing reasons, Local 3's motion for summary judgment should be granted and Defendants should be compelled to arbitrate this dispute in accordance with Article 8 of the PLA.

Dated: March 9, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　EILEEN B. GOLDSMITH
　　　　　　　　　　　　　　　　　　　Altshuler Berzon LLP


By: */s/ Eileen B. Goldsmith*
　　　EILEEN B. GOLDSMITH

*Attorney for Plaintiff International Union of Operating Engineers Local 3*

---

be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion," which only occurs when the contract explicitly excludes a given topic from the arbitral process altogether. *Warrior & Gulf*, 363 U.S. at 584. As discussed above, there is no question that a grievance over what constitutes "Covered Work" is arbitrable under PLA §8.1.

9