1  COURTNEY CHAMBERS, Bar No. 312011
   cchambers@littler.com
2  LITTLER MENDELSON, P.C.
   333 Bush Street
3  34th Floor
   San Francisco, California 94104
4  Telephone: 415.433.1940
   Fax No.: 415.399.8490
5
   ARTHUR T. CARTER, Texas State Bar No. 00792936
6  *Admitted Pro Hac Vice*
   atcarter@littler.com
7  LITTLER MENDELSON, P.C.
   2001 Ross Avenue
8  Suite 1500
   Dallas, Texas 75201
9  Telephone: 214.880.8100
   Fax No.: 214.880.0181
10
   Attorneys for Defendant
11 MARATHON PETROLEUM COMPANY, LP, AND
   TESORO REFINING & MARKETING CO., LLC
12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15

16  OPERATING ENGINEERS LOCAL 3,          Case No. 3:22-cv-09057-AGT

17                 Plaintiff,             **DEFENDANTS' OPPOSITION TO
                                          PLAINTIFF'S MOTION FOR
18           v.                           SUMMARY JUDGMENT IN SUPPORT
                                          OF COMPLAINT TO COMPEL
19  MARATHON PETROLEUM COMPANY,           ARBITRATION**
    LP, and TESORO REFINING &
20  MARKETING CO., LLC,                   Date: May 13, 2023
                                          Time: 10:00 a.m.
21                 Defendants.            Courtroom: A, 15th Floor
                                          Judge: Hon. Alex G. Tse
22
                                          Complaint Filed: December 19, 2022
23                                        Trial Date: None Set

24

25

26

27

28

LITTLER MENDELSON,
       P.C.
   333 Bush Street
     34th Floor
  San Francisco, CA
      94104
   415.433.1940

Case No. 3:22-cv-09057-AGT          DEFENDANTS' OPPOSITION TO
                                 PLAINTIFF'S MOTION FOR SUMMARY
                                            JUDGMENT

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION AND SUMMARY OF OPPOSITION .................................................. 1

II. RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS .................. 2

III. ARGUMENT ................................................................................................................ 5

    A. Summary Judgment Must Be Denied Where There Are Triable Issues of Material Fact. .................................................................................................. 5

    B. Arbitration Cannot Be Compelled Unless the Parties Have Agreed to Arbitrate the Dispute. ......................................................................................... 5

    C. Defendant Cannot Be Compelled to Arbitrate this Dispute Because a Grievance Cannot Be Brought Against the "Owner." ........................................... 6

    D. The Subject of the Dispute Is Excluded from the PLA and Therefore Not Subject to the Grievance Procedure. ...................................................................... 11

    E. The Plaintiff's Dispute Is One of Fact to Be Determined by The Court.............. 14

    F. There Is Nothing for the Arbitrator to Decide as the Underlying Dispute Turns on a Decision Reserved for the Owner Under the PLA............................. 16

IV. CONCLUSION ............................................................................................................ 18

LITTLER MENDELSON,
P.C.
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

i

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alday v. Raytheon Co.*,
    693 F.3d 772 (9th Cir. 2012) ......................................................................................... 7

*Am. Fed'n of Musicians of U.S. & Canada v. Paramount Pictures Corp.*,
    903 F.3d 968 (9th Cir. 2018) ......................................................................................... 8

*Ariz. Laborers, Teamsters Cement Masons Local 395 Health Welfare Trust Fund*
    *v. Conquer Cartage Co.*,
    753 F.2d 1512 (9th Cir. 1985) ..................................................................................... 11

*AT&T Technologies, Inc. v. Comm. Workers*,
    475 U.S. 643 (1986) ......................................................................................... 6, 12, 15

*Board of Trustees of Sheet Metal Workers v. Gibbons*,
    No. 98-0596, WL 574400 (N.D. Cal. Aug. 31, 1998) .................................................... 5

*Central States Pension Fund v. Kroger Co.*,
    73 F.3d 727 (7th Cir. 1996) ......................................................................................... 10

*CNH Indus. N.V. v. Reese*,
    138 S.Ct. 761 (2018) .................................................................................................... 10

*Columbia Exp. Terminal v. Int'l Longshore & Warehouse Union*,
    23 F.4th 836 (9th Cir. 2022) ........................................................................................ 11

*Contra Costa Legal Assistance v. Legal Services*,
    878 F.2d 329 (9th Cir. 1989) ................................................................................. 14, 16

*Engineers & Architects Assn.*,
    30 Cal.App.4th 644 (1994) ........................................................................................... 17

*Faaola v. GES Exposition Servs., Inc.*,
    No. C 09-02327 WHA, WL 10695727 (N.D. Cal. Aug. 7, 2009) ................................. 7

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) ................................................................................................. 6, 14

*Jin v. Rodriguez*,
    No. 104CV5894, WL 224430 (E.D. Cal. Jan. 26, 2006), *adopted as modified*
    *by*, WL 657098 (E.D. Cal. March 15, 2006) ............................................................... 5

*John Wiley & Sons, Inc. v. Livingston*,
    376 U.S. 543 (1964) ..................................................................................................... 12

LITTLER MENDELSON,
P.C.
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

*LAWI/CSA Consolidators, Inc. v. Teamsters Local 63*,
      849 F.2d 1236 (9th Cir. 1988)..................................................................................... 6

*M&G Polymers USA, LLC v. Tackett*,
      574 U.S. 427 (2015)..................................................................................................... 8

*Northern California Newspaper Guild Local 52 v. Sacramento Union*,
      856 F.2d 1381 (9th Cir. 1988)............................................................................... 15, 16

*Paper, Allied Ind., Chem. v. Air Prod. Chem.*,
      *300 F.3d 667 (6th Cir. 2002)* ..................................................................................... 7

*Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776*,
      595 F.3d 128 (3d Cir. 2010)......................................................................................... 7

*Steelworkers v. American Mfg. Co.*,
      363 U.S. 564 (1960) ................................................................................................... 12

*Steelworkers v. Warrior & Gulf Co.*
      363 U.S. 574 (1960) ................................................................................................... 14

*United Teachers of Los Angeles v. Los Angeles Unified School Dist.*,
      54 Cal.4th 504 (Cal. 2012) ........................................................................................ 14

*United Transportation Union v. Southern Cal. Rapid Trans. Dist.*,
      7 Cal.App.4th 804 (1992)........................................................................................... 17

**Statutes**

CA Health & Safety Code § 25536.7 ................................................................................. 5

**Other Authorities**

Federal Rule of Civil Procedure 56(d) ............................................................................... 1

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

iii.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

## I. INTRODUCTION AND SUMMARY OF OPPOSITION

Plaintiff Operating Engineers Local 3 ("OE Local 3" or "Union") motion seeking to compel Defendants Marathon Petroleum Company, LP ("Marathon") and Tesoro Refining & Marketing Co., LLC ("Tesoro") (collectively "Defendants") to arbitrate mischaracterizes the language and purpose of the Tesoro California Refineries Construction & Maintenance Labor Agreement ("PLA"). While Plaintiff's counsel's cursory motion suggests that simply compelling Defendant to arbitrate this dispute should be a foregone conclusion, Plaintiff's Counsel's motion does not engage with the complicated and fact-intensive inquiry necessary to determine whether the particular dispute against these particular Defendants can properly be subjected to arbitration under the PLA.[1]

Whether a collective bargaining agreement creates a duty for two parties to arbitrate a particular grievance is an issue for the courts, and this Court has the power to, and should, rule that the Plaintiff cannot circumvent the express language, and purpose, of the PLA to arbitrate a matter against the PLA "Owner" who is not subject to arbitration pursuant to the terms of Section 8 of the PLA. Further, even if Defendants (the "Owner" in the PLA) can be forced to participate in Section 8's grievance procedure culminating in arbitration, compelling arbitration in this instance is improper because the underlying dispute—whether Defendants are required to award *all* aspects of soil and material testing and inspection to Plaintiff—is clearly and unambiguously excluded from the definition of "Covered Work" under the PLA as quality assurance/quality control work and is therefore not subject to Section 8's grievance procedure. Further, Plaintiff's motion to compel arbitration should be denied because the underlying dispute involves an exercise of discretion granted to Defendants by Section 2.3.5 of the PLA, and forcing Defendants to arbitrate its exercise of discretion would read out the word "discretion" from the PLA and shift the authority and "discretion" granted to Defendants under the PLA to an arbitrator. For these reasons, and as more fully explained herein, Plaintiff's motion fails to establish that they are entitled to judgment as a

---

[1] Given the factual disputes necessary to resolve the issues presented in this matter, Defendants are presently determining whether a motion pursuant to Federal Rule of Civil Procedure 56(d) is necessary. If Defendants determine such a motion is warranted, it will so file forthwith.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

1.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

matter of law because there are in fact genuine issue of material fact in regard to their claim for relief and, therefore, their motion should be denied.

## II.  RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Defendants are petroleum refining, marketing, and transportation companies that provides oil refining, marketing, and pipeline transportation services.  Marathon acquired Tesoro in October 2018 and currently owns and operates a refinery in Martinez, California that is being converted to a renewable fuels manufacturing and terminal facility.  The work being done to convert the refinery is referred to as the Martinez Renewable Fuels Project ("the Project").

Work on the Project is subject to the PLA entered into between Defendant Tesoro,[2] the State Building and Construction Trades Council of California, the Los Angeles/Orange Counties Building and Construction Trades Council, the Contra Costa Building and Construction Trades Council, and, among other unions, Plaintiff.  (R. Doc. 25-1 at 3, 28, 29.)  Defendants are the "Owner" in the PLA and, as the Owner, agreed that certain "Covered Work" will be assigned only to entities that, are a party to the PLA at the time they enter a contract to perform Covered Work.  (*Id.* at 7.)  Defendants, however, have no such obligation as it relates to non-Covered Work, and the PLA specifically carves out certain non-covered categories of work including quality assurance/quality control work.  (*Id.* at 5-7.)  Also relevant to this matter, the PLA contains a grievance procedure, which is outlined in Section 8.  (*Id.* at 17-20.)

The parties negotiated the PLA in 2017.  Then Associate Managing Counsel, Supply Chain, Shenna Bradshaw ("Bradshaw") participated in bargaining the PLA on behalf of Defendants. (Declaration of Shenna Bradshaw (Bradshaw Decl., ¶ 3.)  During those negotiations, the parties discussed at length what sections of the PLA would apply to the Owner, including the section related to arbitration.  (*Id.* at ¶¶ 4-5.) Bradshaw told the unions repeatedly that the Owner would not agree to being subject to the grievance procedure.  (*Id.* at ¶ 6.)  The parties, therefore, agreed on language that the Owner could, on its own initiative, participate in the grievance procedure

---

[2] Defendant Marathon does not dispute that, as Tesoro's owner, it is subject to the terms of the PLA to the same extent as Tesoro.

LITTLER MENDELSON, P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

2.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

outlined in Section 8 of the PLA but was not required to do so. (*Id.*) Bradshaw's understanding was thus that Section 8 did not mandate the Owner participate in the grievance procedure. (*Id.*)

The parties also negotiated what would and would not constitute Covered Work and reached the agreement memorialized in Section 2 of the PLA concerning scope of work. Among other areas, the PLA identifies certain types of specialty contracting work that are not covered (*i.e.* work that is excluded from coverage under the PLA). (Hunley Decl., ¶ 4.) As noted above, and pertinent to Plaintiff's motion, Section 2.3.9 of the PLA excludes "quality assurance/quality control" from "Covered Work." (R. Doc. 25-1 at 6; Hunley Decl., ¶ 4.)

On May 6, 2022, Defendants held the pre-job "markup" meeting regarding the Project. (Hunley Decl., ¶¶ 3, 8.) Pre-job "markup" meetings are held before work on a project begins to provide an overview of the project to all unions party to the PLA and allow the unions to claim for their membership certain aspects of Covered Work on the project. (*Id.* ¶ 8.) During this meeting, Plaintiff's representative, Tom Kohlenberg ("Kohlenberg"), claimed without exception that all of the soil and material testing and inspection as work that should be performed by contractors signatory to a labor agreement with Plaintiff. (*Id.* at ¶ 9.) Marathon's Corporate Construction Manager, Kirbie Hunley ("Hunley"), thereafter met with Kohlenberg to further discuss why Plaintiff should be awarded all such testing work. (*Id.*) During this discussion, Hunley told Mr. Kohlenberg that section 2.3.9 of the PLA excludes the type of quality inspection and assurance aspect of the soil and material testing work from Covered Work and further explained that Plaintiff's apprentice programs do not train for the skills required to meet the quality assurance and quality control standards for the Project. (*Id.* at ¶¶ 6, 9.) Specifically, Hunley was concerned that Plaintiff's apprentice programs did not meet the requirements for quality assurance and quality control work set forth by bodies such as the American Society of Mechanical Engineers ("ASME"), the American Petroleum Institute ("API"), and the National Association of Corrosion Engineers ("NACE"). (*Id.* at ¶ 5.) Complying with these standards and codes are not optional for Defendants, and further, complying ensures that the Project is completed to the highest standards. (*Id.*) For example, the NACE standards apply to corrosion prevention and control and are used by a

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

3.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

multitude of industries, like the Defendants', where corrosion is a key concern. (*Id.*) Soil surveying and some soil testing is being done with Plaintiff's signatory contractors.

Hunley asked Plaintiff to provide information on the apprentice program showing that Plaintiff's training satisfies ASME, NACE, or API requirements, but did not receive such documentation. (*Id.* at ¶¶ 9-10.) Because Plaintiff did not provide information to Defendants demonstrating that Plaintiff is qualified to perform the quality assurance and control work at the standards set by bodies such as the ASME, API, and NACE, and because Defendants were not required by the PLA to award this quality control work to a PLA signatory, Defendant hired contractors who were qualified to perform the work.

On August 4, 2022, Plaintiff contacted Hunley to complain that Marathon had hired non-union contractors to perform work that Plaintiff could perform in violation of the PLA. (R. Doc. 25-2 at 2.) On August 12, 2022, Plaintiff sent to Marathon a grievance alleging that Marathon violated various sections of the PLA by hiring non-signatory subcontractors to perform testing and inspection work Plaintiff believed to be within the definition of "Covered Work." (R. Doc. 25-3 at 2.) Specifically, the grievance alleged that Defendant violated the PLA by contracting out the soil and material testing work to a non-signatory contractor and asserted entitlement to work consisting of quality control and quality assurance. Contrary to the claims in the grievance, Defendant was contracted with a company signatory to the PLA (F3 Land Surveying) to perform the work covered in Section 2.1, *i.e.,* the survey work and soils inspection. The Union clarified that their grievance did not concern the surveying work being performed by F3 but rather pertained to the other testing and inspection. Defendant informed the Union that the inspection work they are seeking to do is outside the scope of the PLA because (a) the Union's assertion that it covers all inspection and testing is in conflict with 2.3.9, which excludes that type of work from Covered Work; and (b) they do not have a skilled and trained workforce, pursuant to SB 54 (CA Health & Safety Code Section 25536.7), and therefore the work is excluded pursuant to 2.3.5. The Union did not provide information verifying that the has an approved apprenticeship program that trains and provides certifications for API, AWS, and NDE requirements. Therefore, the Union's signatory contractors

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

4.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

1  cannot meet the requirements of having a skilled and trained workforce, and it would be unlawful

2  for Marathon to contract with Local 3 contractors for such work.

3      To date, the parties have not resolved the dispute.  Plaintiff has now filed the instant action

4  to compel Defendants to participate in arbitration pursuant to the grievance procedure outlined in

5  Section 8 of the PLA.  (R. Doc. 1.)

6  **III.    ARGUMENT**

7      **A.    Summary Judgment Must Be Denied Where There Are Triable Issues of
        Material Fact.**

8

9      Where plaintiff moves for summary judgment on an issue with respect to which it would

10 bear the burden of proof at trial, plaintiff must "demonstrate affirmatively that they are entitled to

11 judgment as a matter of law because there is no genuine issue of material fact with regard to each

12 element of their claims for relief." *Board of Trustees of Sheet Metal Workers v. Gibbon*s, No. 98-

13 0596, 1998 WL 574400, *2 (N.D. Cal. Aug. 31, 1998).  In opposing summary judgment, however,

14 the opposing party need only establish that a "genuine issue as to any material fact actually does

15 exist." *Jin v. Rodriguez*, No. 104CV5894, 2006 WL 224430, *2 (E.D. Cal. Jan. 26, 2006), *adopted

16 as modified by*, 2006 WL 657098 (E.D. Cal. March 15, 2006).

17     Plaintiff does not meet its burden, because it fails to establish: (1) that Defendants, as the

18 Owner in the PLA, are subject to the grievance procedure; (2) that the assignment of work it seeks

19 to arbitrate is subject to the  to the Grievance Procedure when the work in question s is excluded

20 from "Covered Work" in the PLA; and (3)  that the PLA it permits  an arbitrator as essentially

21 requested by Plaintiff, to alter and/or prescribe limitations to the express language of the PLA.

22 Defendants have, at the very least, established triable issues of fact with respect to each of these

23 issues, and should in fact be deemed entitled to judgment in its favor as a matter of law.

24     **B.    Arbitration Cannot be Compelled Unless the Parties Have Agreed to Arbitrate
        the Dispute.**

25

26     Courts, as a matter of law, must determine whether a dispute under a collective bargaining

27 agreement is arbitrable. *LAWI/CSA Consolidators, Inc. v. Teamsters Local 63*, 849 F.2d 1236,

28

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT                    5.                DEFENDANTS' OPPOSITION TO
                                                                PLAINTIFF'S MOTION FOR SUMMARY
                                                                JUDGMENT

1238-39 (9th Cir. 1988) (*citing AT&T Technologies, Inc. v. Comm. Workers*, 475 U.S. 643, 649 (1986)). "[A] compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *Id.* at 1239 (*quoting John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964)).

Thus, in cases invoking the "federal policy favoring arbitration of labor disputes," the courts are to adhere to discharge their duty to satisfy themselves that the parties agreed to arbitrate a particular dispute, notwithstanding the presumption in favor arbitrability. *AT&T Technologies, Inc.*, 475 U.S. at 651-52. In fact, the presumption of arbitrability only applies where the presumption is not rebutted. *Id.* A court must never hold that the presumption overrides the principle that a court may submit to arbitration "only those disputes ... the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (*citing First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)). The presumption should be applied *only* where it reflects, and derives its legitimacy from, a judicial conclusion (absent a provision validly committing the issue to an arbitrator) that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed, is legally enforceable, and is best construed to encompass the dispute. *Id.* Courts must review the entire CBA, and give effect and meaning to all of its provisions. *Paper, Allied Ind., Chem. v. Air Prod. Chem., 300 F.3d 667, 676 (6th Cir. 2002).* Courts may not simply accept an arbitration proponent's claim that a grievance arises under a CBA without critical examination. *Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776*, 595 F.3d 128, 132 (3d Cir. 2010). Accordingly, the presumption of arbitrability does not apply here as the facts establish that Defendants did not agree to submit the dispute to the Grievance Procedure as set forth below.

### C. Defendant Cannot Be Compelled to Arbitrate this Dispute Because a Grievance Cannot Be Brought Against the "Owner."

Plaintiff's motion for summary judgment seeking to compel Defendants to arbitrate should be denied because Defendants are the "Owner" under the PLA, and the Owner is not subject to arbitration under Section 8 of the PLA.

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

6.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

This conclusion follows from the language of the PLA and the bargaining history concerning same when read through the lens of the federal common law standards concerning interpretation of labor contracts. *Alday v. Raytheon Co.*, 693 F.3d 772, 782 (9th Cir. 2012) ("In construing a CBA, we apply federal common law principles of contract interpretation, which take into account the policies underlying our national labor laws.") (citing *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456-57 (1957)). Under these principles, courts "begin by looking to the CBA's express written terms" and "interpret[ing] written terms in the context of the entire agreement's language, structure, and stated purpose." *Id.* (citing *Trs. of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores,* 519 F.3d 1045, 1047 (9th Cir. 2008)). In other words, collective bargaining agreements, "[l]ike other contracts, must be read as a whole and in light of the law relating to it when made." *Faaola v. GES Exposition Servs., Inc.,* No. C 09-02327 WHA, 2009 WL 10695727, at *3 (N.D. Cal. Aug. 7, 2009) (quoting *Int'l Broth. of Elec. Workers, Local 387, AFL-CIO v. N.L.R.B.,* 788 F.2d 1412, 1414 (9th Cir. 1986)). When the words are clear and unambiguous, their "meaning is to be ascertained in accordance with its plainly expressed intent." *Am. Fed'n of Musicians of U.S. & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018) (quoting *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015)). If the language of a collective bargaining agreement is ambiguous, then the court may rely on extrinsic evidence to help resolve the ambiguity. *Id.*

In this case, the Section 8 of the PLA contains a detailed grievance procedure which culminates in arbitration. (R. Doc. 25-1 at 18-19.) Section 8 does not say that a grievance can be brought *against* an Owner. Instead, it states in Section 8.2 that the "Owner and other Employers . . . may *bring forth* grievances under this Article." (R. Doc. 25-1 at 18.) The use of the phrase "bring forth," without saying against who, does not evince that the parties agreed Plaintiff or an Employer can force the Owner to participate in arbitration.

Consistent with the absence of any express statement that a grievance maybe brought against the Owner is the language of Section 8 as a whole, which makes it clear that the parties did not intend that the Owner could be forced to participate in the grievance process or submit to

LITTLER MENDELSON, P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. 3:22-cv-09057-AGT

7.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

arbitration. To start, Section 8.2 draws a distinction between "Owner" on the one hand and "other Employers" on the other. (*Id.*) The distinction is significant because in other sections of the PLA, Owner and Employer are defined to be synonymous. (*See e.g.*, R. Doc. 25-1 at 3, § 1.4.) By specifically distinguishing the two, the parties demonstrated their intent that the Owner would have distinct rights and obligations under Section 8 of the PLA from the other signatories. And other portions of Section 8 show the distinct nature of the Owner's obligations under Section 8. For example, Section 8.9 permits that "[a]ny party to a grievance may invite the Owner to participate in resolution of a grievance. The Owner may, it its own initiative, participate in Steps 1 through 3 of the Grievance procedure." (*Id.*) Similarly, Section 8.4, states that when a grievance involves anything other than an individual grievant, the grievance "shall be discussed by the Owner, State Council and Local council and then, if not resolved[,]" proceed to Step 4 of the grievance procedure steps contained in Section 8.4.[3] (*Id.*)

Section 8.4, Step 4 of the PLA again sets the Owner apart from all other parties who may be subject to arbitration under the grievance procedure. Under Step 4, if a grievance is not settled under earlier steps:

> [E]ither party may request the dispute be submitted to arbitration or the time may be extended by mutual consent of both parties. The request for arbitration and/or the request for an extension of time must be in writing *with a copy to the Owner*. Should the parties be unable to mutually agree on the selection of an Arbitrator, selection for that given arbitration shall be made by seeking a list of 7 labor arbitrators with construction experience from the Federal Mediation and Conciliation Service and alternately striking names from the list of names on the list until the parties agree on an Arbitrator or until one name remains. *The first party to strike a name from the list shall alternate between the party bringing forth the grievance and the party defending the grievance. Owner shall keep a record of the sequence and shall notify the parties to the grievance as to which party has the right to strike a name first.*

(*Id.* at 18-19 (emphasis added).)

---

[3] For disputes that involve only an individual grievant, Section 8.4 requires that the parties "attempt to resolve the grievance" within five days. In contrast, disputes with more than one individual grievant must "be discussed" with the Owner. This weaker language is yet further evidence that the parties did not intend the Owner to be subject to grievance procedures outlined in Section 8.

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

8.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

That Step 4 specifically notes that the Owner must receive a *copy* of documents filed in relation to a grievance between the "parties" to the arbitration demonstrates that the parties did not contemplate the Owner being the subject of the arbitration demand. The procedure for selecting an arbitrator outlined in the final sentences of Step 4 also demonstrates this point as that procedure puts the Owner in a place of authority not ordinarily held by a party subject to arbitration. Similarly, in Section 8.6, the parties agreed that an Arbitrator "shall issue a written decision that will be served on all parties *and on the Owner*." *Id.* This again demonstrates that the parties did not contemplate that the Owner would be a party to the arbitration.

Combined, these clauses demonstrate that the parties agreed that the Owner may "bring forth" a grievance, must "discuss" certain grievances involving more than an individual grievant, *may* participate in the grievance process, and must play a quasi-supervisory role over disputes between others as demonstrated by the Owner's role in selecting an arbitrator and requirements that it be served a copy of key documents. It does not demonstrate that Section 8 is properly interpreted to mean the Owner can be forced to participate in arbitration.[4]

In contrast to this stands only one clause which suggests the parties did intend there to be some way in which the Owner may be subject to arbitration, Section 8.7. This section again reinforces that the Owner's participation in grievance resolution is voluntary by noting that the Owner will not be responsible for costs, "[r]egardless of whether the Owner participates in the resolution of a grievance." (*Id.*) The section also notes that an Owner can be responsible for costs if "the grievance is against the Owner." This single phrase is not determinative, however, because it is one phrase contemplating that the Owner might submit to arbitration in a larger instrument which clearly outlines that the Owner's participation in the PLA's grievance procedure is voluntary, quasi-supervisory, or that of an interested party. Section 8.7's cost language is therefore most appropriately interpreted to mean that if the Owner voluntarily submits a dispute to arbitration under

---

[4] That the Owner would not be subject to mandatory arbitration is also logical. In practice, the Owner contracts with Employers who directly employ employees most likely to file a grievance under the PLA. The type of disputes involving the Owner, like this one, are categorically different than those subject to Section 8.4. If the parties have a dispute with the Owner, they have other remedies, such as a breach of contract action in federal court.

LITTLER MENDELSON, P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    the PLA, it is liable for those costs.

2         At most, Section 8.7 renders Section 8 of the contract ambiguous because it is subject to

3    more than one reasonable interpretation—either the parties agreed that the Owner would be subject

4    to arbitration or they agreed that the Owner was distinct from other parties to the PLA and allowed

5    to participate in the grievance process, including voluntarily participating in or submitting to

6    arbitration, but could not be compelled to do so. *CNH Indus. N.V. v. Reese*, 138 S.Ct. 761,

7    765 (2018); *Central States Pension Fund v. Kroger Co.*, 73 F.3d 727, 732 (7th Cir. 1996) ("When

8    parties suggest different, yet reasonable interpretations of a contract, the contract is

9    ambiguous."). This ambiguity must be resolved without application of any presumptions in favor

10   of arbitration because, as the Ninth Circuit recently highlighted, Supreme Court precedent provides

11   that it is only appropriate to apply an interpretive presumption in favor of arbitrability when "the

12   parties have agreed to arbitrate *some* matters pursuant to an arbitration clause." *Columbia Exp.*

13   *Terminal v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 847 (9th Cir. 2022) (quoting

14   *Granite Rock*, 130 S. Ct. at 2847). Here, Defendants did not agree in the PLA to arbitrate "some

15   disputes" with Plaintiff, and a presumption in favor or arbitrability is inapplicable.

16        Instead, under contract interpretation principles outlined above, summary judgment is

17   inappropriate here because there are disputes of fact as to the parties' intent when forming the

18   contract that directly bear on how Section 8 of the PLA should be interpreted. In this circuit,

19

20        When the operation of an ordinary contract is not clear from its
     language, a court generally may consider extrinsic evidence to

21   determine the intent of the parties in including that language. That
     principle is applied with even greater liberality in the case of a CBA.

22   In ascertaining the intent of the parties to a CBA, "the trier of fact
     may look to the circumstances surrounding the contract's execution,

23   including the preceding negotiations . . . It may also consider the
     parties' conduct subsequent to contract formation . . . and such

24   conduct is to be given great weight.

25

26        *Ariz. Laborers, Teamsters Cement Masons Local 395 Health Welfare Trust Fund v.*

27   *Conquer Cartage Co.*,753 F.2d 1512, 1517-18 (9th Cir. 1985) (emphasis and internal citation

28   omitted).

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT                    10.          DEFENDANTS' OPPOSITION TO
                                                           PLAINTIFF'S MOTION FOR SUMMARY
                                                           JUDGMENT

In addition to the text of Section 8 as discussed above, there is other evidence supporting Defendants' interpretation that the PLA does not require the Owner to arbitrate in the instant matter. Namely, when negotiating the PLA, Tesoro had no intent to be subject to the arbitration clause and after execution, understood that Section 8 did not apply to it. (Bradshaw Decl., ¶ 6.) Defendants made this clear to Plaintiff during negotiations, and the parties came up with a compromise contained in Section 8.9 of the PLA. (*Id*.)

In short, Plaintiff's motion for summary judgement must be denied because Section 8 of the PLA does not apply to the Owner as it does other parties to the PLA. In sub-section after sub-section in Section 8, the PLA gives he Owner the right to act as an interested party or in a quasi-supervisory role by allowing it to voluntarily participate in grievances, assist other parties in selecting an arbitrator, and receiving copies of grievance documents and arbitration decisions. Section 8.7 does not change this interpretation, but even if it does, it at most renders Section 8 ambiguous because it is subject to more than one interpretation. Resolving this ambiguity requires determining what the parties' intended when forming the agreement, and resolving the question turns on disputed facts, namely what transpired during negotiations on this topic. Plaintiff's motion must also be denied on these grounds.

### D.    The Subject of the Dispute Is Excluded from the PLA and Therefore Not Subject to the Grievance Procedure.

Even assuming Defendants are subject to Section 8 as the Owner, Defendants do not have to arbitrate the underlying dispute because the PLA only applies to "Covered Work" and various provisions in the PLA clearly and unambiguously exclude quality assurance/quality control from the definition of Covered Work, which is the subject of Plaintiff's grievance. While the function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator, the court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–568 (1960). *See also AT&T Technologies*, 475 U.S. at 651 ("It is the court's duty to interpret the agreement and to determine whether the parties intended to

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

11.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

arbitrate grievances concerning layoffs predicated on a 'lack of work' determination by the Company.") Courts are charged with giving effect to the parties' intent as to arbitrability, as reflected by the *express* language in their contract. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) (emphasis added). Here, Plaintiff speciously frames the issue to be arbitrated as a "dispute about the meaning of the PLA" and thus must be compelled to arbitration. (R. Doc. 24 at 7.) However, the PLA excludes the disputed work from coverage under the PLA sections 2.3.5 and 2.3.9 and therefore it is not subject to the PLA, and thus arbitration thereunder.

Plaintiff's grievance claims that all soils and materials inspection and testing and building/construction inspection on the Project is supposed to be Covered Work completed by contractors signatory to the PLA despite explicit language in the PLA excluding quality assurance and quality control work from Covered Work in section 2.3.9. What Plaintiff's motion fails to acknowledge is that Union contractors are already performing components of the soil and material inspection work on the Project. What Plaintiff seeks to arbitrate pertains to work that is quality assurance and quality control, which is explicitly excluded under Section 2.3.9. Contrary to Plaintiff's contention, their grievance seeks to resolve a dispute that involves work not covered under the PLA and therefore not subject to the Grievance Procedure. Likewise, Plaintiff's grievance also involves work excluded from the PLA in Section 2.3.5, because the Union does not have qualified signatory contractors to perform the work. (Hunley Decl. ¶¶ 4-7.) The PLA excludes work performed by specialty contractors when there are no qualified signatory contractors, and Plaintiff does not have qualified contractors available to perform the work, and their apprentice programs do not train for the skills required to meet the Company's quality assurance and quality control standards. (*Id.* at ¶¶ 6-7.)

Plaintiff's reliance on *Warrior* Gulf for their conclusion that this grievance is undoubtedly subject to arbitration fails to acknowledge that, unlike in *Warrior Gulf*, the PLA does explicitly exclude given topics from the PLA and gives Defendant the discretion to decide that certain work must be excluded from Covered Work in the PLA. *Warrior Gulf*, 363 U.S. 584 (Because there was no "express provision excluding [the contracting out] grievance from arbitration, the Court held

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

that the union's grievance was arbitrable.")  The Court in *Warrior Gulf* held that the simple concept of contracting out work alone is not something specifically reserved for management control *unless* the agreement excludes contracting out from the grievance procedure, and in such a case a grievance based solely on contracting out would not be arbitrable. *Id.* at 583-85.  Here, unlike in the CBA in *Warrior Gulf*, the PLA contains provisions – Section 2.3.5 and 2.3.9 – excluding the subject of Plaintiff's grievance from the coverage of the PLA and there is language in the PLA showing that the parties agreed to permit Defendant the "discretion" when deciding whether it must utilize specialty contractors. *See United Teachers of Los Angeles v. Los Angeles Unified School Dist.*, 54 Cal.4th 504, 519 (Cal.,2012) ("[*Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574 (1960)] recognized that a matter expressly excluded from the collective bargaining agreement cannot be arbitrated.").[5]  The Plaintiff cannot circumvent the exclusion of certain items from the PLA by claiming that a management decision – i.e., Defendants' decision to use specialty contractors because of the unavailability of qualified union contractors – violated multiple provisions of the CBA.

Because Plaintiff's grievance pertains to work not covered in the PLA, it is not subject to the Grievance Procedure.  In *Granite Rock Company. v. International Brotherhood of Teamsters*, the Supreme Court held that the parties' dispute was a matter to be resolved by the District Court, rather than arbitrator, because, among other reasons, the dispute did not "arise under" the parties' collective bargaining agreement.  561 U.S. 287, 307 (2010).  The Court held that the parties' arbitration clause did not evidence their consent to arbitrate the issue, recognizing that the arbitration clause pertained only to disputes that "arise under" the contract and thus there was no valid basis for the Court of Appeals' conclusion that the claims arose under the CBA and were thus arbitrable. *Id.*  Likewise, Plaintiff's grievance cannot arise out of the PLA given that part of the disputed work is excluded from the coverage of the PLA.  The Court must review both the subject

---

[5] Similar to *United Teachers of Los Angeles*, 54 Cal.4th at 519-20, Defendants are also subject to statutory constraints that limit their ability to arbitrate certain matters in SB 54 that are exclusively management prerogatives, subject to the constraints of statute, including ensuring its contractors and any subcontractors use a "skilled and trained workforce."  According to *United Teachers of Los Angeles*, a statutory exclusion meets the requirements under *Warrior Gulf* to be considered expressly excluded from a collective bargaining agreement.  *Id.*

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

13.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

matter and contract language to determine arbitrability, not a litany of article numbers as suggested by Plaintiff's motion. *See Contra Costa*, 878 F.2d at 330 ("[t]o determine the nature of a grievance, [the court] must review the specific language of the collective bargaining agreement *and the facts alleged in the grievance.*") (emphasis added).

Compelling Defendants to arbitrate the dispute as grieved defies the very terms of the PLA – that is, Defendant and Plaintiff contracted to exclude certain work from the coverage and scope of the PLA, and Plaintiff cannot now circumvent the explicit, and already bargained-for language, in the PLA. Accordingly, the underlying issue here – whether Defendant violated the PLA by using non-union specialty contractors for the soils and materials inspection and testing – is not an arbitrable issue as the work at issue falls outside the scope of the PLA. Defendants are not bound by the grievance clause and are not obligated to arbitrate this issue involving work outside the scope of the PLA. The sheer allegation that the PLA has been violated, *ipso facto*, entitles the Plaintiff to arbitration is simply devoid of logic, and contrary to law.

**E.      The Plaintiff's Dispute Is One of Fact to Be Determined by The Court.**

Plaintiff attempts to create the impression that the issue to be arbitrated is simply one of contract interpretation when in actuality it is purely a factual question for a judicial forum. Applying the principles summarized in *AT&T Technologies*, in *Northern California Newspaper Guild Local 52 v. Sacramento Union*, 856 F.2d 1381 (9th Cir. 1988), the court held that it, not the arbitrator, was empowered to determine if the subject of dispute was a dispute arising from the "application of the Agreement..." *Id.* at 1383. The union sought to arbitrate the issue of the collective bargaining agreement termination and whether the negotiations for a successor agreement continued through August 4 when the employer unilaterally implemented its last and final offer. *Id.* While the parties' arbitration agreement established grievance and arbitration procedures for "[a]ll disputes and disagreements arising from application of this agreement", the court held that it, not the arbitrator, was empowered to determine if the termination of the agreement was a dispute arising from the "application of the Agreement..." *Id.* In doing so, the court analyzed the terms of the agreement and the subject of the dispute and held that the parties' primary dispute was not over the application

LITTLER MENDELSON, P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. 3:22-cv-09057-AGT

14.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

of any terms of the agreement but rather whether the dispute was purely factual; and concluded its resolution did not require the interpretation or construction, i.e., "application", of any substantive provisions of the Agreement. *Id.* at 1383-84.

The result here is no different for the very simple reason that the Plaintiff's dispute – i.e., whether the soils and materials inspection and testing work Plaintiff seeks to do is "Covered Work" – falls outside the scope of the arbitration clause by virtue of the limitation to disputes arising from "the application and interpretation" of the PLA. The Plaintiff's grievance does not require the application or interpretation of the PLA but involves a question of fact as to whether the work being performed is quality assurance and quality control work excluded from the PLA and whether the Union has qualified contractors to perform the work. Plaintiff argues that whether Defendants violated the PLA "is plainly a 'question arising out of and during the term of [the PLA] involving its interpretation and application'" because the grievance requires the determination of whether the inspection and testing is "Covered Work." (R. Doc. 24 at 7.) Plaintiff further alleges that the question of whether the inspection and testing work is covered under the PLA is "deeply intertwined with the merits of the dispute" and would require the Court to interpret the language of the PLA and determine the intent of the parties' in including soils and materials inspection and testing as Covered Work. (R. Doc. 24 at 8-9.) Contrary to Plaintiff's assertion, there is *nothing* for the Court to interpret as the PLA plainly states that quality assurance and quality control work is not Covered Work and that work performed by specialty contractors is also excluded from Covered Work. As with the *Northern California Newspaper Guild* case, the issue is purely factual – whether the work in dispute is quality assurance and quality control work, which is expressly excluded from the coverage of the PLA in section 2.3.9, or whether this work is excluded from the PLA because the Union does not have qualified signatory contractors to perform this work pursuant to section 2.3.5 of the PLA. The PLA already expressly describes the scope of, and limitations on, the definition of "Covered Work" in section 2.3. Plaintiff's grievance involves a question of fact as to whether the work is quality assurance and quality control work and whether the Union has qualified contractors to perform the work and, if so, there would be nothing for an arbitrator to decide.

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

15.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

Assuming, *arguendo*, that Plaintiff's grievance does require interpretation of the PLA, Plaintiff's contention that only an arbitrator can be called on to interpret the PLA is contrary to the law. (R. Doc. 24 at 7.) In determining whether to compel arbitration, the court may consider evidence on factual issues relating to the threshold issue of arbitrability, i.e., whether, under the facts before the court, the contract excludes the dispute from its arbitration clause or includes the issue within that clause. *See Contra Costa Legal Assistance v. Legal Services*, 878 F.2d 329, 330 (9th Cir. 1989); *Engineers & Architects Assn.*, 30 Cal.App.4th 644, 653 (1994). Parties may submit declarations when factual issues are tendered with a motion to compel arbitration. *Id*. In performing its duty to determine if the parties have agreed to arbitrate that type of controversy, the court is necessarily required 'to examine and, to a limited extent, construe the underlying agreement. *United Transportation Union v. Southern Cal. Rapid Trans. Dist.*, 7 Cal.App.4th 804, 808 (1992). Accordingly, this Court not only may interpret the PLA, but it is required to do so to the limited extent it needs to determine if the parties have agreed to arbitrate the underlying dispute.

F.      **There Is Nothing for the Arbitrator to Decide as the Underlying Dispute Turns on a Decision Reserved for the Owner Under the PLA.**

The PLA defines Covered Work as not including work performed by specialty contractors, and the decision to use specialty contractors is subject to the Owner's standard for safety, quality, and resourcing and controlled by the Owner's "reasonable exercise of discretion." (R. Doc. 25-1 at 6.) Plaintiff's grievance seeks an arbitrator to define, and determine, whether certain work is within the scope of the PLA despite the PLA permitting the Defendants to exercise its "discretion" in determining whether the Union has qualified signatory contractors to perform the work. Compelling arbitration would read out the word "discretion" from the PLA and shift the authority and "discretion" granted to Defendants under the PLA to an arbitrator. It would inevitably impose on Defendants a modification of the PLA, and Section 8.8. of the PLA expressly divests an arbitrator of any authority to "modify, amend, alter, add to or subtract from" any provision of the PLA.

In *Engineers & Architects Assn.*, the Court of Appeal construed a management rights clause to exclude from arbitration the City's decision to lay off a single employee "due to lack of work

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

16.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

1  and/or lack of funds." 30 Cal.App.4th 644, 648 (1994). The employee's grievance asserted "that the

2  action was unnecessary and hence unfair, that sufficient work and funds existed to provide for his

3  position, and that no legitimate reason existed to warrant this action." *Id.* The Court of Appeal held

4  that the City was not required to arbitrate a dispute concerning the adequacy of the justification for

5  the exercise of a reserved management right. *Id.* at p. 655. This is exactly what Plaintiff is seeking

6  Defendant to arbitrate – Defendant's exercise of a right attributed to it by the PLA, i.e., the right to

7  make a decision based on its judgment regarding the qualifications of the Union's signatory

8  contractors to perform social and material testing and inspections. The dispute is not about whether

9  the Defendant's decision to use the specialty contractors involved the exercise of a reserved

10  management right and whether it violated the subcontracting provisions of the PLA. Defendant

11  never agreed to allow any arbitrator to decide the extent of its own decisions, and the Union may

12  not use arbitration to acquire new rights. Indeed, the Plaintiff is asking the Court to direct a

13  prospective arbitration to establish future labor conditions not specifically envisaged in the PLA.

14  Permitting an arbitrator to allegedly interpret and decide the meaning of the term "discretion" will

15  in fact alter and place limits on Defendant's ability to exercise its judgment expressly granted to it

16  in the PLA.

17        Under the guise of arbitration, a material revision and rewriting of the contract, in a quasi-

18  legislative proceeding, will be the result if Plaintiff's grievance is permitted to be arbitrated.

19  Defendant has established standards for vetting quality control and quality assurance contractors

20  and their work processes as this is a highly safety-sensitive contracted service. Defendant has a

21  right to exercise its discretion as the "Owner" pursuant to the PLA, section 2.3.5, and has the

22  controlling determination in setting the standards for the work. Defendant has code and quality

23  requirements that are non-delegable and cannot be altered related to quality assurance and quality

24  control. The OE Local 3 does not have, and never has had, a training curriculum that meets

25  Defendant's standards for the quality control and assurance aspect of soil and material inspection

26  and testing.

27  \\\

28

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's motion for summary judgment should be denied.

Dated: March 31, 2023

LITTLER MENDELSON, P.C.

*/s/ Courtney Chambers*
ARTHUR T. CARTER
COURTNEY CHAMBERS

4853-4586-1463.2 / 028651-1330

Attorneys for Defendant
MARATHON PETROLEUM COMPANY, LP

LITTLER MENDELSON,
P.C.
Attorneys at Law
333 Bush Street
34th Floor
San Francisco, CA
94104
415.433.1940

Case No. 3:22-cv-09057-AGT

18.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT